AO 106 (Rev. 6/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In the Matter of the Search of Property located at | ) | |
| 1003 Erskine Road, Anderson, South Carolina, | ) | Case No. 8:19CR495 |
| more fully described below | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

The premises to be searched (the TARGET LOCATION) is described as follows: The TARGET LOCATION is located at 1003 Erskine Road, Anderson, South Carolina. The TARGET LOCATION is a mobile home, preceded by a dirt driveway. The TARGET LOCATION is composed of beige siding and a similarly colored beige skirting. There is white trim along the top of the TARGET LOCATON, just below the roof line. The roof is pitched with gray shingles. As one faces the TARGET LOCATION from the road, and looking from left to right, there is a large, two-pane window, a small window, and then two large single-pane windows which flank either side of the front door. Each of the aforementioned windows is flanked on either side by faded blue faux shutters. The front door is preceded by a small wooden porch, which is accessed by a short, railed staircase. A clear storm door (trimmed in white) precedes the front door. The front door itself is turquoise blue, and a diamond-shaped window is positioned in the upper-center portion of the door. Also to be searched are all sheds, outbuildings, appurtenances, and vehicles (associated with the occupants of THE PREMISES TO BE SEARCHED) located on the property, as well as the electronic contents of wireless telephones, computers, or other digital storage or media located at the premises, or within any sheds, outbuildings, appurtenances, and vehicles located on the property. Probable cause has been established that on the premises to be searched, there is now concealed: (1) controlled substances and drug paraphernalia; (2) currency, financial instruments, precious metals, jewelry, and other items of value, which are the fruits of drug trafficking; (3) firearms and other weapons; (4) records of drug transactions, including notes, ledgers, receipts, e-mails, computer files, photographs, video tapes, telephone records, calling cards, and correspondence which contain information on current and past associates, and may used to identify co-conspirators who have not yet been fully identified or located; (5) fictitious identification and other documents which are intended to conceal identity and avoid detection by law enforcement, including fictitious driver's licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance; (6) currently and/or previously used cellular telephones and electronic communications devices, including the electronic contents of those devices (i.e. electronic telephone directories, photographs, text messages, etc.); (7) books, records, receipts, notes, ledgers, currency and papers which are evidence of the commission of narcotics and/or money laundering offenses. The records include tally or ledger sheets; sales and/or purchase invoices; band, wire transfer and/or other financial institution records; federal and state corporate, partnership, individual and/or other tax and information returns filed or required to be filed.

The basis for the search under Fed.R.Crim.P. 41(c) is *(check one or more)*:
X evidence of a crime;
X contraband, fruits of crime, or other items illegally possessed;
X property designed for use, intended for use, or used in committing a crime;
_ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute Methamphetamine |

The application is based on these facts:
X Continued on the attached sheet.
_ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Farid "Jay" Rajaee, Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 3, 2019   9:45 a.m.   _____
*Judge's signature*

City and State: Greenville, South Carolina

Kevin F. McDonald, U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

IN THE MATTER OF THE APPLICATION       )
OF THE UNITED STATES OF AMERICA        )        CASE NO.: 8:19CR495
FOR AN ORDER AUTHORIZING A             )
SEARCH WARRANT FOR THE RESIDENCE       )
LOCATED AT 1003 ERSKINE ROAD,          )
ANDERSON, SOUTH CAROLINA               )


**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Farid "Jay" Rajaee, a Special Agent (S/A) with the Drug Enforcement Administration (DEA), being duly sworn, depose and state:

1.  I am an investigative or law enforcement officer of the United States within the meaning of Title 21 United States Code Section 878; an affiant empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 21 of the United States Code. I have been employed as a Special Agent with the Drug Enforcement Administration (DEA) since June of 2000. Prior to my service with the DEA, I was employed for six (6) years as a police officer with the City of Albuquerque, New Mexico. During that time, I was a detective assigned to the Narcotics Section for approximately four (4) years. As a narcotics detective, I conducted narcotics investigations utilizing informants, search warrants and arrest warrants, and undercover work. During my tenure as both a federal and local drug investigator, I have written numerous search warrants and arrest warrants, regularly purchased and sold narcotics while working in an undercover capacity, and frequently utilized the services of informants, and other confidential sources of information. I have written and submitted to the Court numerous affidavits in support of search warrants, pen registers, Title-III wire intercepts, and electronic tracking device (ETD) warrants. I have served as the lead case agent in numerous complex conspiracy investigations, resulting in arrests for offenses related to both drug trafficking and money laundering. I am familiar with

the terminology and distribution methods used by drug traffickers, as well as the methods of packaging, transporting, and ingesting numerous types of controlled substances. I have received training, both formal and informal, in the investigation of violations of controlled substance offenses, including several schools regarding general narcotics investigation. I have also received training in the area of financial investigation. In addition, I have completed the DEA Basic Agent Training Academy, located in Quantico, Virginia. I have participated in the investigation, arrest, and prosecution of numerous drug traffickers.

## PREMISES TO BE SEARCHED

2. This affidavit is being submitted in support of an application for a search warrant at **1003 Erskine Road, Anderson, South Carolina** (hereinafter referred to as the PREMISES TO BE SEARCHED, or TARGET LOCATION). The TARGET LOCATION is more fully described as follows:

3. The TARGET LOCATION is located at 1003 Erskine Road, Anderson, South Carolina. The TARGET LOCATION is a mobile home, preceded by a dirt driveway. The TARGET LOCATION is composed of beige siding and a similarly colored beige skirting. There is white trim along the top of the TARGET LOCATON, just below the roof line. The roof is pitched with gray shingles. As one faces the TARGET LOCATION from the road, and looking from left to right, there is a large, two-pane window, a small window, and then two large single-pane windows which flank either side of the front door. Each of the aforementioned windows is flanked on either side by faded blue faux shutters. The front door is preceded by a small wooden porch, which is accessed by a short, railed staircase. A clear storm door (trimmed in white) precedes the front door. The front door itself is turquoise blue, and a diamond-shaped window is positioned in the upper-center portion of the door. A photograph of the TARGET LOCATION is provided in conjunction with this affidavit, and incorporated as "Attachment A."

4. Also to be searched are all sheds, outbuildings, appurtenances, and vehicles located at the TARGET LOCATION, as well as the electronic contents of any computers, removable media (including thumb drives, removable hard drives, compact discs, or any other device which can maintain digital/electronic data), digital video recorders or hard drives, wireless

2

telephones, or other telecommunications devices located at the premises, or within any sheds, outbuildings, appurtenances, and vehicles located on the property .

5. Based upon my training and experience as a narcotics agent, I know the following:

    a. Drug traffickers regularly obtain and utilize multiple locations (i.e. houses and apartments) so as to allow them to have more than one place to store contraband and/or conduct drug-related business.

    b. Drug traffickers frequently store controlled substances and drug paraphernalia for packaging, diluting, weighing and/or distributing controlled substances in, on, and around residence and/or business, and within vehicles and/or structures located on their property or its surrounding curtilage in an effort to avoid detection by law enforcement.  This paraphernalia often includes but is not limited to:  scales, plastic bags, diluting agents, etc.

    c. Drug traffickers frequently store currency, financial instruments, precious metals, jewelry, and other items of value, which are the proceeds of drug transactions inside, on, and around their residence and/or place of business.

    d. Drug traffickers frequently have in their possession, whether on their person, inside their vehicle, or in, on, or around their residence, firearms and other weapons.  These firearms and weapons are commonly used by drug traffickers to protect their property, including, but not limited to: controlled substances; drug proceeds in the form of currency, jewelry and other real property; and other items of value whose existence may be considered illegal.

    e. Drug traffickers frequently maintain in their residence and/or business, records of drug transactions, including notes, ledgers, receipts, computer files, photographs, video tapes, digital video recorders and associated hard drives memorializing footage generated by closed circuit or internet-based video camera systems, telephone records, calling cards, and correspondence which contain information on current and

past associates, and may be used to identify co-conspirators who have not been identified or located.

f. Drug traffickers frequently maintain fictitious identification and other documents which are intended to conceal their identity and avoid detection by law enforcement, including fictitious driver licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance.

g. Drug traffickers frequently maintain in their residence currently and previously used wireless telephones and/or electronic communications devices, particularly those wireless telephones and/or electronic communications devices which require the telephone and/or electronic communications device to be purchased. Drug traffickers frequently store digital and voice messages and phone numbers, belonging to drug purchasers, and other drug traffickers.

h. Drug traffickers regularly use computers in furtherance of drug trafficking and money laundering crimes, by maintaining illegal records and ledgers on the hard drives (or associated removable media) of said computers. Drug traffickers and money launders also regularly use computers to communicate with one another by way of e-mail, or other telecommunications devices using voice over internet protocol (VOIP), which work in conjunction with computers.

i. Drug traffickers and money launderers maintain books, records, receipts, notes, ledgers, currency and papers which are evidence of the commission of their narcotics and money laundering offenses. The records include tally or ledger sheets; sales and/or purchase invoices; bank, wire transfer and/or other financial institution records; federal and state corporate, partnership, individual and/or other tax and informational returns filed or required to be filed.

**BACKGROUND INVESTIGATION**

**IDENTIFICATION OF JUSTIN BLAKE TUCKER, AND CONTROLLED PURCHASES OF METHAMPHETAMINE FROM TUCKER ON MARCH 26 AND 28, AND APRIL 1, 2019**

6.  Beginning in March of 2019, detectives with the Anderson County Sheriff's Office (ACSO) Narcotics Unit met with a confidential source (hereinafter CS-1, or he/she), who explained that a subject whom he/she knew as (Justin) Blake TUCKER was selling methamphetamine from the TARGET LOCATION.[1]

7.  On March 26, 2019, CS-1 was outfitted with a recording/transmitting device, given a quantity of ACSO operational funds, and surveilled as he/she traveled to the TARGET LOCATION.[2] Investigators observed CS-1 enter and then exit the TARGET LOCATION, and then return to a predetermined meet location. Upon meeting with CS-1, he/she turned over a quantity of a substance which investigators field-tested as positive for methamphetamine. CS-1 further explained to investigators that he/she had purchased the methamphetamine from TUCKER.

8.  On March 28, 2019, CS-1 was outfitted with a recording/transmitting device, given a quantity of ACSO operational funds, and surveilled as he/she traveled to the TARGET LOCATION. Investigators observed CS-1 enter and then exit the TARGET LOCATION, and then return to a predetermined meet location. Upon meeting with CS-1, he/she turned over a quantity of a substance which investigators field-tested as positive for methamphetamine. CS-1 further explained to investigators that he/she had purchased the methamphetamine from TUCKER.

9.  On April 1, 2019, CS-1 was outfitted with a recording/transmitting device, given a quantity of ACSO operational funds, and surveilled as he/she traveled to the TARGET LOCATION. Investigators observed CS-1 enter and then exit the TARGET LOCATION, and then return to a predetermined meet location. Upon meeting with CS-1, he/she turned over a quantity of

---

[1] CS-1 has a fairly lengthy criminal history, including at least one felony conviction. CS-1 has been working with investigators for over one year, and has never provided information found to be untrue, or incorrect. Information provided by CS-1 has led to the issuance of state search warrants, the seizure of illegal drugs, and the arrests of multiple individuals. CS-1 is currently working with agents in hope of financial reward. No promises as to any such reward have been made to CS-1.

[2] In each instance referenced in this affidavit where CS-1 made controlled purchases of methamphetamine from the TARGET LOCATON, ACSO investigators searched CS-1 prior to and after each purchase. In no instance was CS-1 found to be in possession of any contraband.

a substance which investigators field-tested as positive for methamphetamine. CS-1 further explained to investigators that he/she had purchased the methamphetamine from Whitney STRICKLAND, whom CS-1 identified as a criminal associate to TUCKER. CS-1 further noted that TUCKER was also present at the residence at the time of the purchase.

## CURRENT INVESTIGATION

## SURVEILLANCE OF TARGET LOCATION FOLLOWING CONTROLLED PURCHASES, AND ARRESTS/DRUG SEIZURES ON APRIL 11 AND 23, 2019

10. On the afternoon of April 11, 2019, investigators were conducting surveillance of the TARGET LOCATION. Investigators observed a vehicle depart from the residence, and the vehicle was stopped a short time later, for a traffic violation. A roadside investigation led to the identification of the vehicle occupants, Johnathan SMITH and Stephen LLOYD. Investigation further established that both SMITH and LLOYD were in possession of multi-gram quantities of methamphetamine (field-tested as positive for methamphetamine). Both subjects were arrested, and in post-Miranda statements (wherein each subject affirmed that they understood their respective rights), admitted that they had just purchased the methamphetamine from TUCKER at the TARGET LOCATION, and had been purchasing methamphetamine from TUCKER on a regular basis, over and extended period of time.

11. During the early evening hours of April 23, 2019, investigators were again conducting surveillance of the TARGET LOCATION. Investigators eventually observed a silver Dodge Ram truck arrive at the residence. The driver (later identified as Davey ALEXANDER) was observed retrieving an object from the rear driver side fender well of the truck, and then entering the TARGET LOCATION. ALEXANDER eventually returned to the vehicle, and appeared to place something in the rear driver side fender well. The vehicle was followed a short distance from the TARGET LOCATION and stopped for a traffic violation. The occupants were identified as Davey ALEXANDER and Kimber NORWOOD. A roadside

investigation led to the discovery of approximately 46 grams of methamphetamine (field-tested as positive for methamphetamine) in the fender well of the truck.[3]

## ITEMS TO BE SEIZED

12. Based upon the aforementioned facts, I believe there is probable cause to believe that the following items (which agents believe to be evidence of violations of Title 21 USC § 846) will be found in a search of the TARGET LOCATION.  The items listed below constitute contraband, evidence and/or instruments of the aforementioned offenses.

   a. Controlled substances and drug paraphernalia;

   b. Currency, financial instruments, precious metals, jewelry, and other items of value, which are the fruits of drug trafficking, and indicative of unexplained wealth as it relates to personal income earnings reported to the IRS;

   c. Firearms and other weapons;

   d. Records of drug transactions, including notes, ledgers, receipts, computers and computer files (whether they exist on the hard drive of a computer, or any removable media), photographs, video tapes (or any other digital/electronic media contained on a device such as a digital video recorder), telephone records, calling cards, and correspondence which contain information on current and past associates, and may be used to identify co-conspirators who have not been identified or located;

   e. Fictitious identification and other documents which are intended to conceal identity and avoid detection by law enforcement, including fictitious driver licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance;

---

[3] Neither ALEXANDER nor NORWOOD provided substantive cooperation following their respective arrests.

f. Currently and/or previously used cellular telephones and electronic communications devices, as well as including the electronic contents of those devices (i.e. electronic telephone directories, photographs, text messages, etc.); and

g. Books, records, receipts, notes, ledgers, currency and papers which are evidence of the commission of narcotics and money laundering offenses. The records include tally or ledger sheets; sales and/or purchase invoices; bank, wire transfer and/or other financial institution records; federal and state corporate, partnership, individual and/or other tax and informational returns filed or required to be filed.

13. Based on the aforementioned facts, I respectfully request that a search warrant be issued for the TARGET LOCATION listed in paragraph two of this affidavit.


_____
FARID "JAY" RAJAEE
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION


Subscribed to and sworn before me this __3__ day of May, 2019

_____
KEVIN F. MCDONALD
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF SOUTH CAROLINA

# ATTACHMENT "A"



# 1003 ERSKINE ROAD, ANDERSON, SOUTH CAROLINA